UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

COLLEEN ORR,

                                Plaintiff,

                                                    DECISION AND ORDER

                                                    04-CV-6018L

                    v.

JO ANNE B. BARNHART,
Commissioner of Social Security,


                                Defendant.
_____

## INTRODUCTION

Plaintiff Colleen Orr ("plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3) seeking review of the final decision of the Commissioner of Social Security ("the

Commissioner"), that she is not eligible for disability insurance benefits and Supplemental Security

Income ("SSI") under Titles II and XVI of the Social Security Act ("the Act").

This case has a long procedural history that began more than five years ago when plaintiff

applied for disability insurance and SSI benefits on May 15, 2000.  She alleged an inability to work

beginning December 6, 1998 due to back and left shoulder pain, as well as anxiety and depression.

(T.102-04, 118). Her applications were denied initially and on reconsideration. (T.56-64, 68-71).

Plaintiff then requested a hearing, and appeared, with counsel, before Administrative Law Judge

("ALJ") James E. Dombeck on September 6, 2001. (T.25-55). On October 19, 2001, ALJ Dombeck rendered a decision finding that plaintiff was not disabled. (T.9-23). That decision became final when the Appeals Council denied plaintiff's request for review on March 1, 2002. (T.6-7).

On March 13, 2002, plaintiff commenced a civil action in this Court seeking review of the Commissioner's final determination. *See Orr v. Barnhart*, 02-CV-6146L. By stipulation of the parties entered November 1, 2002, the Court reversed the Commissioner's decision based on errors committed by the ALJ and remanded the case for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g). In that Order, I directed the Commissioner to obtain updated treatment records, to conduct a new hearing, to obtain the testimony of a vocational expert, and to consider all of plaintiff's impairments, including her obesity. (T.421-25).

On remand, the Appeals Council further ordered the ALJ to consider the extent to which plaintiff's nonexertional limitations eroded the occupational base for sedentary work, to provide citations to the medical evidence in the record to support his assessment of plaintiff's residual functional capacity,[1] to have the vocational expert clarify the effect of the assessed limitations on plaintiff's occupational base and, should he find that plaintiff can perform certain work, to cite specific jobs she could perform and state their incidence in the national economy. (T.426-28).

On October 1, 2003, a second administrative hearing was held before the ALJ at which a vocational expert and a psychiatric medical expert testified. (T.366-402). On November 19, 2003, the ALJ issued a second decision finding that plaintiff was not disabled. (T.356-63). It is undisputed

---

[1] The Appeals Council further noted that the ALJ failed to cite "any medical evidence or adequately explain[] the basis for concluding that the claimant retains the ability to perform the exertional requirements of sedentary work." (T.427).

that, in his subsequent decision, the ALJ did not correct many of the errors or address the issues identified by this Court or the Appeals Council in the remand orders. Nevertheless, this decision became the final decision of the Commissioner when the Appeals Council decline to assume jurisdiction. This action followed.

Plaintiff now moves for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c), and seeks to reverse the final decision of the Commissioner based on numerous legal errors, and to remand for immediate calculation and payment of benefits. (Dkt. #3). The Commissioner agrees that the ALJ committed certain errors and cross-moves to remand the case, but for further administrative proceedings only. (Dkt. #7). The Commissioner argues that the ALJ should have a third opportunity to apply the law correctly, and that an award of benefits is not appropriate because the record does not compel a conclusion that plaintiff was disabled. I disagree.

As discussed below, plaintiff's motion is granted and the case is remanded solely for the calculation and payment of benefits.

## FACTUAL BACKGROUND

Plaintiff was forty-six years old at the time of the supplemental hearing in October 2003 and has a general education diploma. She has past relevant work as a nurse's aide, developmental aide/school bus monitor, cashier, and delicatessen manager. (Tr.102, 124, 126, 367, 372). She stopped working in December 6, 1998, after she injured her left shoulder. (Tr.193, 373). When conservative measures failed, plaintiff underwent shoulder surgery on October 12, 1999. Following surgery, plaintiff continued to experience shoulder pain and decreased motion, secondary to adhesive capsulitis and rotator cuff weakness. (T.198-99). Dr. James Mark, plaintiff's orthopaedic surgeon,

noted in January of 2000, that plaintiff would not be a good candidate to return to work that involved any lifting, repetitive work, or overhead work. (T.190).

Plaintiff also suffers from obesity. She is 5' 3" tall (T.29) and, at the time of the supplemental hearing, she weighed 250 pounds (T.385). In 1999, plaintiff developed low back pain that radiated down the left leg. (T.303). MRI of the spine was normal. Plaintiff was given a back support and prescription for physical therapy. (T.189). She underwent a lumbar steroid epidural block in January 2001, which provided only limited relief. (T.280). In June 2001, plaintiff's treating physician, Dr. Eleanor Dewitt, diagnosed plaintiff with lumbar degenerative disc disease with left radiculpathy. She opined that plaintiff should never stoop, bend, lift, carry, push, or pull, and that she was limited in walking, climbing, standing, and sitting.  Dr. Dewitt opined that plaintiff was not capable of working in any capacity at that time. (T.283). In February 2002, Dr. Dewitt prescribed a cane to help plaintiff ambulate. (T.459).  Plaintiff testified at the hearing that she also uses a TENS unit at lease once a day. (T.383).

In August 2000, plaintiff began complaining of increased anxiety and depression. Plaintiff had previously been diagnosed in 1994 with major depressive disorder, panic disorder, and avoidant personality disorder. (T.310-13). She was prescribed Zoloft in May 2000 and then Paxil in June 2001. (T.305, 290). She began mental health treatment at the John D. Kelly Behavioral Center on April 5, 2001, where she attended weekly therapy sessions to stabilize her mood and functioning. Plaintiff was suffering from decreased sleep, confusion, memory loss, nervousness, anxiety, decreased ability to care for herself, weight gain, and increased panic attacks. (T.297). She was diagnosed with major depressive disorder, recurrent. Treatment was also prescribed to rule out post

traumatic stress disorder and alcohol abuse. Her global assessment of functioning was 45. (T.299).

In 2003, Dr. Aaron Satloff, a Board Certified Psychiatrist was called by the Commissioner to testify as a psychiatric expert. He reviewed plaintiff's medical records and diagnosed plaintiff with major depressive disorder, panic disorder, and personality disorder. (T.390). He opined that plaintiff's mental disorders were so severe that they met the listing criteria found on the Commissioner's Listing of Impairments at sections 12.04, 12.06, and 12.08. Nevertheless, at the time of the hearing, plaintiff had met the listing criteria for approximately eight months, which is less than the required duration of one year. 20 C.F.R. §§ 404.1509; 416.909.

Further, the medical record contains repeated references to plaintiff's alcohol dependence. When she could afford it, plaintiff reported drinking up to a six-pack of beer per day. (T.469). Dr. Satloff found that, at one time, plaintiff's alcohol dependence met the listing for substance abuse, found at section 12.09 on the Commissioner's Listing of Impairments. At the supplemental hearing, however, plaintiff had significantly reduced her alcohol consumption and reported drinking only a six-pack every six months. (T.374). Thus, Dr. Satloff opined that plaintiff no longer met the listing severity for substance abuse.

## DISCUSSION

### I. Standards for Determining Disability

To determine whether a person is disabled within the meaning of the Act,[2] the ALJ proceeds

---

[2] A person is considered disabled when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A physical or mental impairment (or combination of impairments) is disabling if it is of such severity that a person "is not only unable to do [her] previous work but cannot, considering [her] age, education,
(continued...)

through a five-step sequential evaluation. *Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986);

*Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir.1999).  The Second Circuit has described the five-step

process as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial
> gainful activity. Where the claimant is not, the Commissioner next considers whether the
> claimant has a "severe impairment" that significantly limits her physical or mental ability to
> do basic work activities.  If the claimant suffers such an impairment, the third inquiry is
> whether, based solely on medical evidence, the claimant has an impairment that is listed in
> 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner
> will consider the claimant disabled without considering vocational factors such as age,
> education, and work experience; the Commissioner presumes that a claimant who is afflicted
> with a listed impairment is unable to perform substantial gainful activity.  Assuming the
> claimant does not have a listed impairment, the fourth inquiry is whether, despite the
> claimant's severe impairment, she has the residual functional capacity to perform her past
> work.  Finally, if the claimant is unable to perform her past work, the burden then shifts to
> the Commissioner to determine whether there is other work which the claimant could
> perform.

*Tejada*, 167 F.3d at 774.  If plaintiff proves steps one through four, then the burden of proving that

plaintiff "retains a residual functional capacity to perform alternative substantial gainful work which

exists in the national economy" rests squarely with the Commissioner at fifth and final step of the

analysis. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.1999) (quoting *Bapp v. Bowen*, 802 F.2d 601,

604 (2d Cir.1986)); *Schaal v. Apfel*, 134 F.3d, 496, 501 (2d Cir.1998).

## II.  The ALJ's Decision

In his decision of November 19, 2003, the ALJ found that plaintiff had not engaged in

substantial gainful activity since her alleged disability onset. He found that plaintiff had medically

determinable impairments or a combination of impairments (a left shoulder injury, degenerative disc

---

[2](...continued)
and work experience, engage in any other kind of substantial gainful work which exists in the
national economy . . . ." *Id.* at §§ 423(d)(2)(A), 1382c(a)(3)(B).

disease, depression, and anxiety with panic attacks) that were severe, but that did not meet or equal any found in the regulation's Listing of Impairments for the required duration of one year. The ALJ next found that plaintiff had the residual functional capacity to perform "substantially all" of the full range of sedentary work. (T.361). At step five of the sequential evaluation, the ALJ used the Grid Rules 201.21, 201.27 and 201.28 to direct a finding that, given plaintiff's age (46), education (GED), and past relevant work experience (no transferrable skills), she was not disabled. (T.358-60).

In reaching this conclusion, the ALJ found that plaintiff's allegations regarding her limitations were not totally credible and not supported by the objective evidence. He also concluded that plaintiff was an alcoholic, but that this was not an impairment for which she could be found disabled. Additionally, the ALJ determined that plaintiff had a history of noncompliance with treatment recommendations and that she had no good cause for failing to comply. (T.359).

### III. Remand is Necessary

The Commissioner concedes that the ALJ committed legal error in several respects, thereby requiring remand.[3] For instance, the Commissioner agrees that the ALJ erred in assessing plaintiff's credibility, in determining the relevance of plaintiff's noncompliance with treatment, and in assessing plaintiff's alcoholism. The Commissioner further concedes that, despite being ordered to do so by this Court and the Appeals Council, the ALJ failed to consider the effect that plaintiff's

---

[3] Under well-established authority, the Commissioner's decision must be reversed if incorrect legal standards are applied in finding that plaintiff was not disabled. 42 U.S.C. § 405(g); *Schaal*, 134 F.3d at 504 ("'Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.'")(quoting *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir.1987)); *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir.1984)("Failure to apply the correct legal standards is grounds for reversal.").

obesity had on the severity of her impairments and her residual functional capacity. (Dkt. #7).

A review of the subsequent administrative proceedings, including the hearing testimony from the vocational expert, reveals that the ALJ did not follow the directives of this Court or the Appeals Council on remand. Notably, the ALJ never elicited evidence the vocational expert regarding the effect that plaintiff's nonexertional, mental limitations had on her ability to perform other work.  Nor did he elicit any testimony regarding specific jobs plaintiff could perform within her limitations, or the incidence of those jobs in the national economy.

In light of these errors, there is no dispute that the case must be remanded.  The only issue for the Court is whether the case should be remanded for further administrative proceedings, or for the calculation and award of benefits.

I find that benefits are warranted. At the fifth step of the disability determination, the Commissioner has the burden of proving that there were other jobs that plaintiff could perform, in light of her age, education, work experience, and residual functional capacity. *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir.2002). The Commissioner has failed not once, but twice, to meet that burden in this case.  I see no reason why she should be given a third opportunity to do so.

If the only errors the ALJ committed were those conceded by the Commissioner, then perhaps further administrative proceedings would be warranted. However, the ALJ erred in many other respects.

Most notably, he misapplied the Commissioner's regulations when weighing the opinions of plaintiff's treating physicians; he substituted his own judgment when assessing plaintiff's residual functional capacity; and he did not properly assess plaintiff's mental limitations or how they affect her ability to perform other work in the national economy.  In this regard, the ALJ failed to cite any

- 8 -

medical opinion that states that plaintiff could perform the full range of sedentary work. The ALJ rejected the opinion of plaintiff's treating physician, Dr. Dewitt, that plaintiff could never stoop, bend, lift, carry, push or pull, and that she was limited in walking, climbing, standing, sitting, and working at a high rate of speed. (T.283). By doing so, he "arbitrarily substitute[d] his own judgment for competent medical opinion," and "set his own expertise against that of a physician who [submitted an opinion to or] testified before him." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir.1998) (citing *McBrayer v. Sec. of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir.1983)).

Although the ALJ cited reasons why he discounted Dr. Dewitt's findings regarding plaintiff's mental limitations, he did not explain why he rejected Dewitt's findings regarding plaintiff's exertional limitations.(T.358). When controlling weight is not given to a treating physician's medical opinion, the ALJ must explain his reasons for the weight he does assign to that opinion. 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir.2000); *see also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir.1999) ("Failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.")(internal quotations omitted).

The ALJ also was required to consider the effect that plaintiff's obesity had on the severity of her impairments and her residual functional capacity. *See Willoughby v. Commissioner*, 332 F.Supp.2d 542, 549 (W.D.N.Y.2004); *Shoate v. Barnhart*, No. C02-02162, 2003 WL 21556939, *4 (N.D.Cal. July 3, 2003)(remanding case where the ALJ did not consider the evidence of plaintiff's obesity in determining whether plaintiff suffered from a severe impairment or combination of impairments); *Manning v. Barnhart*, No. 01-1151, 2002 WL 31027937, *2-*3 (D.Kan. Sept.9, 2002) (ALJ was required to make clear at step three and in determining plaintiff's residual functional capacity the impact of plaintiff's obesity on her impairments). There is no dispute that the treating,

- 9 -

examining, and review physicians all agreed that plaintiff was obese.  The regulations recognize that plaintiff's obesity could affect her exertional limitations and must be considered at steps four and five of the evaluation process. *See* Social Security Ruling 02-01p, 2000 WL 628049 (S.S.R.2002).

The ALJ's decision that plaintiff could perform the full range of sedentary work also did not take into account the full extent of her nonexertional or mental limitations. The medical evidence, including the opinions of the Commissioner's medical experts, indicates that plaintiff is moderately limited in at least seven categories of work-related mental activities, including the ability to understand and remember detailed instructions, the ability to make judgments on simple work-related decisions, the ability to interact appropriately with supervisors and co-workers, and to respond appropriately to work pressures or changes in routine. (T.247, 276, 486-87). These limitations can significantly erode the occupational base for the full range of sedentary work, and consultation with a vocational expert  normally is required. *See* Social Security Ruling 96-9p, 1996 WL 374185 (S.S.A.1996). Yet, as discussed above, the ALJ ignored the directive of the Appeals Council to elicit testimony regarding the extent these limitations eroded the sedentary occupational base at step five.

Likewise, it was error for the ALJ not to consider at all the effect that plaintiff's depression and anxiety had on her residual functional capacity to perform other work in the national economy. Although he was correct in finding that those mental disorders did not meet the level of severity required for a listing impairment for most of the time plaintiff alleges disability, the ALJ nevertheless should have considered their effect on her ability to perform work-related functions. Instead, he seems to ignore the fact that she was diagnosed with these disorders at all during the relevant time. This was error. *See* 20 C.F.R. §§ 404.1520a; 416.920a.

- 10 -

I agree with plaintiff that the medical evidence, when given its proper weight, demonstrates that plaintiff retained the residual functional capacity to perform something less than the full range of sedentary work. As such, the ALJ incorrectly relied on the Grid Rules to find that plaintiff was not disabled. *See Bapp*, 802 F.2d at 605 (barring use of the rules where "the claimant's work capacity is significantly diminished beyond that caused by his exertional impairment"); *Iannopollo v. Barnhart*, 280 F.Supp.2d 41, 50-51 (W.D.N.Y.2003)(reversing ALJ's decision finding plaintiff was not disabled based on application of the Grid Rules that plaintiff could perform full range of sedentary work in light of treating physician's opinion that plaintiff had significant nonexertional impairments, including an inability to climb, stoop, crouch, kneel, and crawl); *Zorilla v. Chater*, 915 F.Supp. 662, 667 (S.D.N.Y.1996)(precluding reliance on the Grid Rules where the "claimant's exertional impairments are compounded by significant nonexertional impairments that limit the range of sedentary work that the claimant can perform").

Therefore, I find that the Commissioner did not meet her burden of proving that other work exists in the national economy that plaintiff could perform within her restrictions. *See Iannopollo*, 280 F.Supp.2d at 51 (and cases cited therein). In fact, when examined by plaintiff's counsel, the vocational expert testified that, assuming plaintiff had the mental limitations outlined above, it was his opinion that those limitations "would preclude her from staying employed.  She could probably start a job but because of these difficulties and limitations would not – would probably be fired." (T.401).

Having found that plaintiff is disabled, the Court must consider the effect, if any, plaintiff's alcoholism or noncompliance with treatment had on her disability, neither of which the ALJ did in accordance with the law.  Pursuant to 42 U.S.C. § 423(d)(2)(E), a person found to be disabled after

employment of the five-step sequential evaluation will not be considered disabled within the meaning of the Act "if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to" a finding of disability. The regulations provide that the "key factor" in this analysis is whether the Commissioner would still find a person disabled if she stopped using alcohol. 20 C.F.R. §§ 404.1535(b)(1); 416.935(b)(1). In this regard, the Commissioner must evaluate which of a disabled person's current physical and mental limitations would remain if plaintiff stopped using alcohol, and then determine whether those remaining limitations would be disabling. *Id.* at §§ 404.1535(b)(2); 416.935(b)(2). If her remaining limitations would still be disabling, then alcoholism will not be a contributing factor material to the determination of disability and the disabled person will be eligible for benefits.

The ALJ found that plaintiff was an alcoholic, but went on to hold that "this is not an impairment for which the claimant may be found disabled under the Regulations for the purpose of benefit payment." (T.359). This finding is misleading and does not properly apply the regulations regarding alcoholism. The regulations make clear that when proceeding through the five-step sequential evaluation, the ALJ must consider all of the effects of plaintiff's impairments, including those associated with alcoholism and, only after finding that plaintiff is disabled, determine which impairments would remain if plaintiff stopped using alcohol. Therefore, the ALJ was required to consider the ill effects that plaintiff's alcoholism had on her impairments and limitations. He never did so. Importantly, both the vocational and psychiatric expert testified that with active alcoholism, plaintiff would not be capable of working. (T.397, 399).

The ALJ then should have considered whether plaintiff's impairments, including her severe mental disorders, would continue to exist even in the absence of her alcohol abuse. Dr. Satloff

testified that plaintiff would continue to suffer from severe mental disorders.  In fact, he testified that plaintiff's symptoms of anxiety and panic increased in intensity and duration when plaintiff stopped "self-medicat[ing]" with alcohol. (T.396). Thus, it was only when plaintiff stopped drinking excessively that her mental health deteriorated significantly.  There is no dispute, then, that the medical evidence supports a finding that plaintiff's alcoholism is not material to a finding of disability based on her mental disorders.

Finally, the ALJ erred in evaluating the evidence in the record that plaintiff had been noncompliant with treatment. The record indicates that plaintiff was discharged from mental health treatment in December 2001 and again in June 2002 for non-attendance. (T.469, 472). However, she explained then that transportation was a primary barrier to accessing care, and that she was unable to use public transportation due to her increased anxiety. (T.470).  Dr. Satloff also testified that one aspect of plaintiff's personality disorder is that she feels that it is futile to seek medical treatment for her conditions. The regulations and rulings make clear that the ALJ must not draw any inferences about plaintiff's symptoms and their functional effects based on a failure to seek treatment without first considering any explanation or good cause for not doing so. 20 C.F.R. §§ 404.1530; 416.930. Nevertheless, the ALJ determined that plaintiff was not disabled because she failed to seek medical treatment, but he did not consider these explanations.  In any event, Dr. Satloff opined that plaintiff's anxiety and depression would improve with treatment, but that her personality disorder would persist despite treatment.

When the Court considers all of the relevant evidence and applies the proper legal standards, substantial evidence exists that plaintiff is disabled within the meaning of the Act.  The record here has already been developed fully for the relevant period. Further administrative proceedings or

- 13 -

another hearing would serve no useful purpose. *Williams v. Apfel*, 204 F.3d 48, 50 (2d Cir.1999); *Johnson*, 817 F.2d at 986; *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.1980); *Frederick v. Barnhart*, 317 F.Supp.2d 286, 300 (W.D.N.Y.2004); *Martinez v. Commissioner*, 262 F.Supp.2d 40, 49 (W.D.N.Y.2003)("Where the existing record contains persuasive proof of disability and a remand for further evidentiary proceedings would serve no further purpose, a remand for calculation of benefits is appropriate.").

Therefore, remand is appropriate, but only for the calculation and payment of benefits. To remand the case a third time to the ALJ would result in unnecessary delay on an application that plaintiff filed over five years ago.  *See Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir.2000)(remanding for the sole purpose of calculating an award of benefits where Commissioner failed to meet his burden of proof at step five that plaintiff could perform other work and plaintiff's application had been pending more than six years); *see also Balsamo*, 142 F.3d at 82 (remanding for benefits based on errors at step five and where application had been pending for four years); *Huhta v. Barnhart*, 328 F.Supp.2d 377, 387 (W.D.N.Y.2004)(remanding solely for calculation of benefits based on errors at step five and where application was pending more than nine years); *Soto v. Barnhart*, 242 F.Supp.2d 251, 254 (W.D.N.Y.2003)(remanding solely for calculation of benefits and not further proceedings where the ALJ's error was in interpreting and weighing treating physician evidence, not in failing to develop a complete record).

## CONCLUSION

Plaintiff's motion for judgment on the pleadings (Dkt. #3) and to remand for the calculation and payment of benefits is granted.

- 14 -

The Commissioner's motion to remand for further administrative proceedings (Dkt. #7), is denied.

The final decision of the Commissioner is reversed, and the case is remanded for calculation and payment of Social Security disability insurance benefits and Supplemental Security Income benefits.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       July 5, 2005.